IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | Mag. J. No. 18-122-N |
| | * | |
| JAMES BERNARD BRADDY | * | |

**GOVERNMENT'S MEMORANDUM REGARDING PRETRIAL DETENTION**

Comes now the United States, by and through the United States Attorney for the Southern District of Alabama, and responds to the defendant's Amended Memorandum Regarding Detention Hearing and Bail (Doc. 18), as follows:

The legislative history supporting the Bail Reform Act clearly established the reasons Congress acted as it did in passing the statute. It was reviewed in *United States v. Jessup*, 757 F.2d 378 (1st Cir. 1985), in that Court's consideration of Jessup's claim that the statute deprived him of liberty without due process of law. *Id.*, at 385. Congress found that the evidence presented at the hearings on this matter was persuasive and supported its reform of federal bail statutes. The *Jessup* court concluded that the rebuttable presumption created by Section 3142(e) was a reasonable solution grounded upon a substantial basis in fact, and that the Government's interest in the presumption is strong and legitimate, particularly in light of Congress' constitutional authority and practical fact-gathering power. *Id.*, at 386.

The defendant's burden which must be met to overcome the presumption is a burden of production, not of persuasion, and it does not unconstitutionally infringe upon any protected liberty interest. *Id.*; *see also*, *United States v. King*, 849 F.2d 485, 488 (11th Cir. 1988). Even where the defendant presents evidence toward his burden of persuasion, the presumption does not disappear; rather, "it remains in the case as an evidentiary finding militating against release, to be weigh[ed] along with other evidence relevant to factors listed in Section 3142(g)." *Id.*, at 488 (citations

1

omitted). The court of appeals likewise held that a finding of either dangerousness or risk of flight will be sufficient to detain the defendant pending trial. *Id.*

The Government's burden of proof on the question of fight is governed by the preponderance of evidence standard. *Id.* The Government's burden of proof on the question of dangerousness is governed by the clear and convincing standard. *United States v. Medina*, 755 F.2d 1398, 1402 (11th Cir. 1985). Dangerousness for this purpose has been interpreted to include an evaluation of the future threat that the defendant will continue to violate drug statutes and that the drug enterprise will continue to function. *See, e.g., United States v. Portes*, 786 F.2d 758, 765 (7th Cir. 1985).

The defendant's role in the offense, as well as the size and scope of the organization itself must be considered in the detention decision. *King*, 849 F.2d at 487; *United States v. Palmer-Contreras*, 835 F.2d 15, 18-19 (1st Cir. 1987). In the instant case, the size and scope of the organization is apparent—the defendant was in possession of a massive amount of cocaine and a bag containing $40,000. The scope of the organization is obviously interstate in nature, as the defendant was traveling through Alabama to Georgia from Texas, and he claims residence in Florida.

In connection with the dangerousness factor, the Government is not required to establish an actual danger of recidivism, proven by evidence of criminal history. This position is clearly not required by the statute, nor was it contemplated by congress in formulating the statutory scheme. *King*, 849 F.2d at 847 n.2. In fact, the risk of continued narcotics trafficking on bail does constitute a risk to the community. *United States v. Mauricio*, 974 F.2d 580, 586 (5th Cir. 1992).

The Government further submits that the offenses in which the defendant is involved generates substantial amounts of illegal proceeds, as evidenced by the seizure of cash in his case. The Government submits that it is likely that a drug trafficker might not disclose assets, particularly cash amounts, which would be available to assist him in a decision to flee the jurisdiction. In fact,

situations like this appear to be the rule rather than the exception. See *United States v. $364,960 in U.S. Currency*, 661 F.2d 319, 323-324 (11th Cir. 1981).

The evidence before the Court establishing probable cause at the preliminary hearing established that the defendant was found in possession of a "bag" of approximately $40,000 in cash at the time he was stopped by the Saraland police officers. The Government submits that this money, examined in light of the seizure of the 62 kilograms of cocaine from the same vehicle, puts him in possession of a substantial quantity of proceeds of drug sales. E.g., *United States v. Alexander*, 742 F. Supp. 421, 424-25 (N.D. Oh. 1990).

While the significance of the evidence relating to prior drug offenses is obvious, the Government submits that even acts of domestic violence establish probative evidence of tendency to violence and dangerousness toward others. *United States v. Quartermaine*, 913 F.2d 910, 917 (11th Cir. 1990).

The Government submits that there is no evidence that family members maintain any physical or emotional control over the defendant's actions. See, *United States v. Trosper*, 809 F.2d 1107, 1109-10 (5th Cir. 1987). Evidence of mere "family ties" does not support the position that the defendant is not a flight risk. *Id*. at 1110. To be probative, the evidence must show the sort of family ties from which the court can infer that a defendant is so deeply committed and personally attached that he cannot be driven from it by the threat of a long person sentence. *United States v. Rueben*, 974 F.2d 580, 586 (5th Cir. 1992). Like the defendant in *Trosper*, evidence relating to the defendant's financial condition is "murky" and do not reasonably reconcile his living expenses with legitimate means of support. *Trosper*, 809 F.2d at 1110-11. Liquid and secretive assets are more likely to provide a menas to flee than a reason to stay. *Id. See also, Alexander*, 742 F. Supp. at 424-25; *United States v. Remo*, 782 F. Supp. 53, 55-56 (E.D. Tex. 1991). In fact, the pretrial services report establishes that the defendant's expenses exceed his legitimate income by approximately $1,700 per month. The defendant's witness at the detention hearing also testified that he provided

her with cash to pay for a large family meal when she prepared one. This additional expenditure of cash adds to the question surrounding the defendant's financial condition. As noted above, the Government submits that this condition alone supports the presumption of detention in this case. Evidence of the defendant's international travel is also a factor the Court must consider, as they countervail against his argument of strong ties to a community. See *United States v. Stanford*, 630 F. Supp. 2d 751, 756 (S. D. Tex. 2009). This is a factor which weighs heavily in favor of detention. *Id*.

The defendant's exhibits purport to show some "legitimate" business dealings (three transactions involving shipping of plastic chairs, pumps and rice in November of 2017, but they do not show evidence to support his claim of legitimate sources of income. No documents showing payments made by or received to Whoo Logistics were attached. The Government submits that the question of income necessary to make up a monthly deficit of $1,700 every month is not reflected, nor was there any evidence to establish any other legitimate source of income. Even though the Government seized the $40,000, it is reasonable to conclude that other cash exists and are available to the defendant, in light of the fact that when he was arrested on the federal charges, he had an additional amount of $1,100 in cash on his person at that time. See *Trosper*, 809 F.2d at 1100 (seizure of significant false identification materials from the defendant and from his incredible explanation for his possession if it, court could reasonably conclude that other such documents exist and are available to him).

The defendant's exhibits reflecting information involving Ozzie Lee Davis[1] establish that Davis is a real person, but the Government submits that information alone does not necessarily indicate that the defendant never used the name. Whether he did or did not use an alias, however, is

---

[1] The Government observed that the defendant failed to redact his exhibits, which make extensive disclosures of personal identification information. It therefore appears to the Government that the filings appear to violate the local rule requiring redaction of such exhibits and suggests that the defendant be required to file redacted exhibits.

relatively insignificant in light of the questions created by the defendant's obvious association with an interstate drug smuggling organization and his access to large amounts of cash and undisclosed sources of income.  In light of the foregoing, the Government submits that the defendant has failed to overcome the presumption and the other evidence which supports it.

    WHEREFORE, the Government submits that the evidence before the Court is not sufficient to rebut the presumption of detention, and that the defendant should be detained pending trial.

    Respectfully submitted,

    RICHARD W. MOORE
    UNITED STATES ATTORNEY

    By: s/Gloria A. Bedwell
    Gloria A. Bedwell bedwg1000
    Assistant United States Attorney
    63 South Royal Street, Suite 600
    Mobile, Alabama 36602
    (251)441-5131 (fax)
    (251)441-5845
    gloria.bedwell@usdoj.gov

## **CERTIFICATE OF SERVICE**

    I certify that I have filed a copy of the above pleading with the Clerk of Court using CM/ECF, which automatically serves a copy of the same upon the attorney of record for the defendant, this 16th day of October, 2018.

    s/ Gloria A. Bedwell
    Gloria A. Bedwell
    Assistant United States Attorney